IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **Megan C. Smith,** | )<br>) Case No. 2:18-CV-1171<br>) |
| Plaintiff, | )<br>) Judge Sarah D. Morrison |
| vs. | )<br>) Magistrate Judge Preston Deavers |
| **Commissioner of Social Security,** | )<br>) |
| Defendants. | )<br>)<br>) |

## OPINION & ORDER

Plaintiff Megan C. Smith[1] objects (ECF No. 23) to Magistrate Judge Preston Deavers' January 22, 2020 Report and Recommendation ("R & R") (ECF No. 22) affirming Defendant Commissioner of Social Security's decision denying her applications for social security disability insurance benefits and supplemental security income. The Commissioner did not respond to Plaintiff's Objection. For the reasons set forth below, the Court **OVERRULES** Plaintiff's Objection, **ADOPTS** the Magistrate Judge's Report and Recommendation, and **AFFIRMS** the Commissioner's decision.

### I.

The Magistrate Judge accurately described the procedural background as follows. On June 3, 2014, Plaintiff filed for both disability insurance benefits and supplemental security income, alleging that she had been disabled since April 1, 2010. (R. at 305–17.) Plaintiff's applications were denied initially and upon reconsideration. *Id*. at 155, 187. Plaintiff sought a *de*

---

[1] Plaintiff's name was Gary T. Smith until she changed it to Megan C. Smith effective December 22, 2016. (R. at 326.)

1

*novo* hearing before an administrative law judge. *Id*. at 233–34. Administrative Law Judge ("ALJ") Kristen King held a hearing on May 8, 2017, at which Plaintiff, who was represented by counsel, appeared and testified. *Id.* at 43–56. A vocational expert ("VE") also appeared and testified at the hearing. *Id*. at 56–64. On October 3, 2017, the ALJ issued a decision finding that Plaintiff was not disabled prior to November 12, 2016. *Id*. at 13–29. On May 11, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. *Id*. at 1–6. Plaintiff then timely commenced the instant action.

### A. Plaintiff's Testimony

At the administrative hearing, Plaintiff testified that she is unable to work due to her history of back pain and bone protrusion. *Id*. at 45. She stated that when her back becomes inflamed her "left side shuts down." *Id.* She alleviates her pain by laying down to "wait it out." *Id.* at 46. She spends approximately 14 hours per day laying down. *Id.* at 48–49. She testified that she has undergone therapy and surgery for her back pain and that she was prescribed a cane, walker, and shower stool. *Id.* at 45. On a scale from 0 to 10, Plaintiff rated her pain severity at a level between 4 and 6 when not experiencing inflammation and at 8 when experiencing inflammation. *Id.* at 52. She testified to experiencing inflammation several times per week. *Id*. She reported difficulty bending, lifting, or reaching above her head. *Id*. at 49–50. She noted that it usually takes "anywhere from 45 minutes to several hours" for her "pain to go down." *Id*. at 50. During that time, Plaintiff testified she would watch Netflix and play video games. *Id*. As to her activities of daily living, Plaintiff testified that she drives a couple times per week to her photography class, the grocery store, and various appointments, but said that driving causes inflammation and pain. *Id*. at 44. At the time of the hearing, she lived in an apartment that had an elevator, testifying that she cannot climb stairs. *Id*. at 47. She reported

that her cousin lives in her building and assists with taking out the trash, cooking, and cleaning. *Id*. at 48. Plaintiff noted she is able to sit in her office chair for maybe an hour at a time twice a day, when she wants to watch a show she cannot watch on Netflix. *Id*. at 50.

**B. Vocational Expert Testimony**

A VE, Bruce Growick, testified at the administrative hearing that Plaintiff's past relevant work includes work as a delivery driver, a light, low, semi-skilled job; and a pipe line worker, a heavy, unskilled job. *Id*. at 56.

The ALJ proposed to the VE a hypothetical regarding Plaintiff's residual functional capacity ("RFC") prior to November 12, 2016. *Id*. at 57–58. Based on Plaintiff's age, education, and work experience and the RFC ultimately determined by the ALJ, the VE testified that Plaintiff could not perform her past relevant work, but could perform approximately 1,480,000 unskilled, light jobs in the national economy such as a machine tender, food prep worker and assembly worker. *Id*. Based on the ALJ's second hypothetical with the individual being limited to sedentary work as defined in the regulations, the VE testified that Plaintiff could perform approximately 480,000 unskilled, sedentary jobs in the national economy such as an order clerk, bench assembler and surveillance system monitor. *Id*. at 58–59.

The VE also testified that if the hypothetical individual required a sit/stand option every 60 minutes for 2-3 minutes at a time while staying at her work station, she could perform the jobs provided, but the number of jobs available would be reduced by 25-33%. *Id*. at 59–60.

**C. Relevant Medical Treatment**

In December 2011, Plaintiff had an appointment with the pain section of the OSU Spine Center. She stated that pain in her lower back had been present for the past 15 years, but had gotten more painful in the prior four months. *Id*. at 449. On examination, Plaintiff's gait and

3

stance were normal. *Id*. at 450. She had no difficulty with tandem gait. *Id*. Her range of motion of the lumbar spine was limited with extension being most painful. *Id*. Inspection of the lumbar spine revealed normal lordosis. *Id*. Her cervical and lumbar spines were nontender to palpation. *Id*. At that time, Plaintiff was set up with physical therapy. *Id*. at 451.

On November 6, 2015, Plaintiff presented to Mark Reininga, M.D. a primary care physician, for acute back pain. *Id*. at 1130–31. He assessed neck pain; chronic low back pain; gender dysphoria; major depressive disorder, recurrent severe without psychotic features; and herniated lumbar intervertebral disc. *Id*. Plaintiff was prescribed medication. *Id*. At another appointment with Dr. Reininga on February 12, 2016, Plaintiff reported starting hormone replacement. *Id*. at 1116–20. Dr. Reininga assessed neck pain, depressive disorder, anxiety, chronic low back pain, and gender dysphoria. *Id*.

On July 15, 2016, Plaintiff reported to Dr. Reininga that she had twisted her back several months prior and was slowly getting back to normal. *Id*. at 1105–06. He noted Plaintiff had two bulging discs as noted on an MRI from 2007. *Id*. An examination revealed left sciatica that worsened with examination as well as decreased hip flexion and strength. *Id*. Dr. Reininga planned to request Plaintiff's x-rays and physical therapy records, then order an MRI. *Id*.

Plaintiff was admitted to Riverside Methodist Hospital on November 12, 2016 for seven days.[2] *Id*. at 713–1019. An MRI of the lumbar spine showed left paracentral disc extrusion resulting in stenosis of the left lateral recess with mass effect on the left S1 nerve root and moderate effacement of the left side of the thecal sac and moderate degenerative disc disease. *Id*. at 714. Plaintiff received a lumbar epidural steroid injection on November 13, 2016 and was

---

[2] The ALJ found Plaintiff disabled as of November 12, 2016. (R. at 14.)

also started on a Medrol Dosepak. *Id*. Due to a lack of improvement, she underwent left L5-S1 hemilaminotomy and discectomy on November 18, 2016. *Id*. Plaintiff was noted to be on hormone therapy. *Id*. She was discharged from the hospital on November 19, 2016. *Id.* at 713–14.

Dr. Reininga provided an undated narrative report (with a facsimile date stamp of June 5, 2017) on Plaintiff's behalf noting he had been Plaintiff's primary care provider since 2015. *Id*. at 1061–62. He noted that since had had treated Plaintiff, she had always complained of left back pain as well as a limp. *Id*. Dr. Reininga explained that Plaintiff had dealt with chronic pain since an accident in 1996. *Id*. He explained that she had residual damage to the spinal cord and fairly debilitating radiculopathy as consequence of her long-time injury. *Id*. Dr. Reininga diagnosed Plaintiff with lumbar back pain with left sciatica, severe, status post discectomy L5-S1; bulging disc at L4-L5, and boney protrusion and foraminal osseous protrusion L5-S1 that were not repaired with surgery; major depression; cervical pain; asthma; gender dysphoria; and chronic vitamin D deficiency. *Id*. Dr. Reininga noted that Plaintiff struggled to walk a block, used a cane and rested frequently. *Id*. He indicated that Plaintiff was unable to sit, stand, or walk for more than fifteen minutes and that she struggled with depression because of pain. *Id*.

Dr. Reininga opined that Plaintiff was completely disabled and unable to do competitive, fulltime work, explaining that she struggled even to perform her activities of daily living, including difficulty taking a shower and standing to wash dishes or cook meals. *Id*. Dr. Reininga concluded that Plaintiff's disability would last at least twelve months and was likely lifelong. *Id*.

Dr. Reininga completed a Spinal Impairment Questionnaire on May 17, 2017, wherein he diagnosed Plaintiff with herniated lumbar disc L5-S1, major depression, cervical pain, asthma, gender dysphoria, and vitamin D deficiency. *Id*. at 1066–71. He opined that in an eight-

5

hour workday in total Plaintiff could sit for four hours, stand or walk for four hours, and never lift or carry any weight. *Id*. He stated that it is medically necessary that she avoid continuous sitting in an eight-hour workday. *Id*. Dr. Reininga indicated that Plaintiff could not walk a block at a reasonable pace on rough or uneven surfaces, carry out routine ambulatory activities, or climb a few stairs at a reasonable pace with use of only a single handrail. Id. He recommended that Plaintiff use a single point cane and/or a walker. *Id*. Dr. Reininga indicated Plaintiff could never-to-rarely grasp, turn, and twist objects or use her arms for reaching. *Id*. He stated that her symptoms were frequently severe enough to interfere with attention and concentration. *Id*. Dr. Reininga estimated Plaintiff would be absent from work more than three times per month because of her impairments. *Id*. He noted that the description of symptoms and limitations he included in his answers to the questionnaire apply as far back as April 1, 2010. *Id*.

### D. Consultative Examination

Plaintiff was examined for disability purposes by Stephen Nutter, M.D. on September 10, 2014. *Id*. at 555–63. On examination, Dr. Nutter found Plaintiff exhibited a limping gait, discomfort in the sitting position, slightly diminished air movement in the lungs, tenderness in the paraspinal muscles and spinous processes of the lumbar spine, positive straight leg raise testing, and an inability to squat. *Id*. A lumbar spine x-ray revealed mild scoliosis. *Id*. Dr. Nutter diagnosed Plaintiff with a chronic lumbar strain and asthma. *Id*. He opined that Plaintiff is at least moderately limited in the ability to bend, stoop, lift, walk, crawl, squat, carry, travel, push, and pull. *Id*.

### E. State Agency Review

In September 2014, after review of Plaintiff's medical record, Diane Manos, M.D., opined that, based on the medically determinable impairment of degenerative disc disease,

Plaintiff could lift twenty pounds frequently and ten pounds occasionally; stand or walk for about six hours out of eight; and sit for six hours out of eight. *Id*. at 130, 132–33. Dr. Manos also found that Plaintiff was unlimited in climbing ramps or stairs and in balancing, and that she was frequently limited in crouching, climbing ladders/ropes/scaffolds, stooping, kneeling, crouching or crawling. *Id*. at 133. Dr. Manos also found that Plaintiff should avoid concentrated exposure to fumes, odors, gases, etc. *Id*. at 134.

In January 2015, Elaine Lewis, M.D., reviewed the record upon reconsideration and affirmed Dr. Manos's assessment. *Id*. at 164–66.

**F. The Administrative Decision**

On October 3, 2017, the ALJ issued her decision. *Id.* at 13–29. The ALJ determined that Plaintiff is entitled to a period of disability commencing November 12, 2016. *Id*. at 14. Plaintiff met the insured status requirements through March 31, 2016. At step one of the sequential evaluation process,[3] the ALJ found that Plaintiff had not engaged in substantially

---

[3] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. See 20 C.F.R. §416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

7

gainful activity since April 1, 2010, the alleged onset date. *Id.* at 16. The ALJ found that Plaintiff has the following severe combination of impairments: chronic back and neck pain with degenerative disc disease, degenerative joint disease status post lumbar surgery, asthma, depression, anxiety, and history of gender dysphoria. *Id.* She further found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ assessed the severity of Plaintiff's impairments by comparing the medical evidence to the requirements of the following listings: 1.02, major dysfunction of a joint; 3.03, asthma; and 12.04, 12.06, and 12.07, mental disorders. *Id.* At step four of the sequential process, the ALJ set forth Plaintiff's RFC prior to November 12, 2016 as follows:

> After careful consideration of the entire record, [the ALJ] finds that prior to November 12, 2016, the date the [Plaintiff] became disabled, the [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: she could never climb ladders, ropes, or scaffolds. She could never crawl. She could occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She had to avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, and gases and poorly ventilated areas. She had to avoid all use of dangerous machinery and all exposure to unprotected heights. She was limited to simple, routine tasks. She was able to perform goal-oriented work, but no constant production rate pace work, such as an automated assembly line. She was limited to static job duties defined as jobs in which changes occur no more than approximately 10% of the workday and changes should be explained ahead of time. She was limited to only occasional interaction with others.

*Id.* at 17–18. In making the above determination, the ALJ assigned "limited" weight to Dr. Reininga's specific statement as to Plaintiff's symptoms and related limitations applying as far back as April 1, 2010. *Id.* at 26. The ALJ determined that Dr. Reininga's November 2016 letter is primarily focused on limitations as of November 2016 and thereafter. *Id.* The ALJ

8

continued that Dr. Reininga's May 2017 opinion also cites to findings that are not in his earlier treatment records (including neurogenic bladder or bowel incontinence, pseudoclaudication, motor loss, etc.). *Id.* The ALJ assigned "some" weight to Dr. Nutter's examination report as "his assessment appears based on and generally consistent with signs and findings on examination." *Id.* at 24. The ALJ however did not assign "great" weight to Dr. Nutter's opinion given the vague conclusion of "moderate" limitation. *Id.*

The ALJ assigned "some" weight to the assessments from the state agency reviewing physicians, Drs. Manos and Lewis, finding their opinions were consistent with the record, but that due to the combination of Plaintiff's impairments and medications, the ALJ provided for additional limitations in functioning. *Id.* at 23.

The ALJ next set forth Plaintiff's RFC beginning on November 12, 2016, as follows:

> After careful consideration of the entire record, the undersigned finds that beginning on November 12, 2016, the [Plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with the following limitations: she can never crawl. She can occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, and gases and poorly ventilated areas. She must avoid all use of dangerous machinery and all exposure to unprotected heights. She is limited to simple, routine tasks. She is able to perform goal-oriented work, but no constant production rate pace work, such as an automated assembly line. She is limited to static job duties defined as jobs in which changes occur no more than approximately 10% of the workday and changes should be explained ahead of time. She is limited to only occasional interaction with others. However, she would miss at least 2 days of work per month.

*Id.* at 25. In making this determination, the ALJ discussed Plaintiff's hospitalization in November 2016 as noted above. *Id.*

Relying on the VE's testimony, the ALJ concluded that Plaintiff was unable to perform

9

her past relevant work but that she could perform jobs that exist in significant numbers in the national economy prior to November 12, 2016. *Id*. at 26–28. She therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act prior to November 12, 2016. *Id.* at 28–29.

## II.

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b) (1); *see also* Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy* v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

## III.

Plaintiff argues that the Magistrate Judge erred by failing to order "sentence-six" remand to allow the ALJ to consider a September 7, 2018 letter ("Letter") by Dr. Reininga. (ECF 14-1.) The letter was created almost one year after the ALJ's decision. Sentence-six governs remand for consideration of additional evidence. It provides:

> The court may, on motion of the Commissioner of Social Security made for good cause shown before the Commissioner files the Commissioner's answer, remand the case to the Commissioner of Social Security for further action by the Commissioner of Social Security, and it may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a

10

> showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C.S. § 405. Hence, remand is possible if the additional evidence is new and material and good cause exists for it not being previously produced. Plaintiff bears the burden of proving that each of the three criteria are satisfied to warrant remand under sentence-six. *Willis v. Sec'y of HHS*, 727 F.2d 551, 553-554 (6th Cir. 1984). "Failure to establish any one of the[] three elements is fatal to the moving party's request." *Glasco v. Comm'r of Soc. Sec.*, 645 F. App'x 432, 435 (6th Cir. 2016) (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 n.1 (6th Cir. 1988)).

To be "new," the additional evidence "must not have been in existence or available to the claimant at the time of the administrative proceeding." *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990).

To satisfy the materiality requirement, Plaintiff must show that there was a "reasonable probability that the Commissioner would have reached a different conclusion on the issue of disability if presented with the additional evidence." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Additional evidence that is merely cumulative of evidence already present in the record or simply shows worsening of a condition is not material. *See Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 277–78 (6th Cir. 2010); *see also Longworth v. Comm'r Soc. Sec. Admin.*, 402 F.3d 591, 598 (6th Cir. 2005).

To address the "good cause" prong, Plaintiff must demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357. "Additional evidence generated for the purpose of attempting to prove disability in contrast to evidence produced by continued medical treatment does not meet the

good cause requirement of the Act." *Lockett v. Astrue*, No. 3:11-CV-372, 2012 WL 1537629, at *11 (S.D. Ohio May 1, 2012), report and recommendation adopted sub nom. *Lockett v. Comm'r of Soc. Sec.*, No. 3:11CV372, 2013 WL 1149658 (S.D. Ohio Mar. 19, 2013).

The Letter opines that Plaintiff "is 100% disabled and has been so since laid off from work in 2011," prior to Plaintiff's date last insured. (ECF No. 14-1.) Dr. Reininga explained that Plaintiff had an MRI in 2006 that revealed a bulging disc at L4-L5, but that the results of this MRI had been lost and Plaintiff's insurance company denied an updated MRI in 2016. *Id.*

Before the Magistrate Judge, Plaintiff argued that the Letter satisfied each of the requirements such that remand was justified under sentence-six. The Magistrate Judge concluded the opposite. Although the R&R does not directly comment on the newness aspect of the analysis, the R&R does address the remaining elements of materiality and good cause. As to materiality, the R&R stated:

> In his June 2017 letter and May 2017 questionnaire, Dr. Reininga opined that Plaintiff's symptoms began prior to November 2016. (R. at 1061–62, 1066–71.) In the June 2017 letter, he indicated that Plaintiff was injured in 1996 and "has dealt with chronic pain since accident." (R. at 1061.) In the May 2017 questionnaire, he provided that the symptoms and limitations detailed in the questionnaire apply as far back as April 2010. (R. at 1071.) The ALJ considered these opinions and discounted them, finding them to be inconsistent with the other evidence. (R. at 25–26.) Because Dr. Reininga's new letter is cumulative of evidence already presented in the record, the case should not be remanded for consideration of this evidence. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005) (affirming the district court's holding that remand was unnecessary where the evidence was "largely cumulative of evidence and opinions already present on the record").

(ECF NO. 22 at 15.) Next, the R&R noted that instead of seeking an extension to submit the Letter prior to the ALJ's decision, Plaintiff admittedly had the Letter created "*in response*" to the ALJ's decision. *Id.* (emphasis in original). As such, the R&R held that Plaintiff failed to satisfy

12

the good cause element of the analysis because the Letter was a mere solicitation of a medical opinion to contest the ALJ's decision. *Id.* (citing *Koulizos v. Secretary of Health and Human Servs.*, 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986) and *Lockett*, 2012 WL 1537629, at *11).

Plaintiff first attacks the R&R's conclusion that the Letter is immaterial. Specifically, Plaintiff argues that the Letter "addresses the retroactivity of Dr. Reininga's earlier statements on Ms. Smith's condition . . . ." (ECF No. 23 at 3.) Plaintiff continues that the Letter therefore equates to a "clear statement supporting earlier onset of disabling symptoms and previously assessed functional limitations." *Id*. Plaintiff comments that the ALJ's decision frames the May 17, 2017 questionnaire and the June 5, 2017 narrative report as focusing on Plaintiff's functioning since November 2016. (ECF No. 23 at 3.)

That may be true, but it is insufficient to sustain Plaintiff's objection because those documents and the Letter each state that Plaintiff's symptoms began prior to her date last insured. (R. 1061, 1071; ECF No. 14-1.) Thus, because the Letter is cumulative of evidence already in the record, the Court concurs with the Magistrate Judge that the Letter is not material. The Sixth Circuit directs that "evidence [] largely cumulative of evidence and opinions already present in the record" need not be considered for remand. *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005). This is so because "'a sentence six remand is appropriate only if the plaintiff can show new substantive evidence that might have changed the outcome of the prior proceeding[;]' and if the record presently reflects the same evidence and opinions at the time of the proceeding, then it is not probable that the 'new' evidence would have changed the outcome." *Walton v. Astrue*, 773 F. Supp. 2d 742, 751 (N.D. Ohio 2011) (quoting *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 654 (6th Cir. 2009)). Plaintiff fails to establish the materiality component for sentence-six remand so her objection is **OVERRULED**.

Plaintiff also fails to demonstrate that she had good cause for producing the Letter almost a year after the ALJ's decision. Her Objection states that the Letter is "intended to clarify the record" to correct the ALJ's failure to consider Plaintiff's assessed limitations pre-date last insured. But the ALJ did consider those claimed limitations; she just assigned them limited weight. (R. at 26.) In addition, Plaintiff admits that the Letter is "in response" to the ALJ's determination. (ECF No. 14 at 9.) As the Magistrate Judge correctly held, good cause is not shown for remand if the new evidence was generated merely for the purpose of attempting to prove disability. *Koulizos v. Sec'y of Health & Human Servs.*, 802 F.2d 458 (6th Cir. 1986). Plaintiff also fails to establish the good cause element of a sentence-six remand so her objection is **OVERRULED** on this ground as well.

## IV.

Based upon the foregoing, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, and after a *de novo* determination of the record, this Court concludes that Plaintiff's objections to the Report and Recommendation of the Magistrate Judge are without merit. The Court thus **OVERRULES** the Plaintiff's Objection (ECF No. 23), **ADOPTS** the Magistrate Judge's Report and Recommendation (ECF No. 22), and **AFFIRMS** the Commissioner's decision. The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Order and terminate this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**